IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SHELLY YOAKUM, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | 2:22-CV-239-BR |
| | § | |
| TYSON FOODS INC., | § | |
| | § | |
|    Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO EXCLUDE**
**TESTIMONY OF PLAINTIFF'S TESTIFYING EXPERT**

Before the Court is Defendant Tyson Foods, Inc.'s ("Tyson") Motion to Exclude Testimony of Adam W. Pickens, Ph.D.—one of Plaintiff's retained experts. (ECF 30). After considering the Motion, Response, Reply, and applicable law, the Motion is DENIED.

## I.    Background and Parties' Arguments

Plaintiff ("Yoakum") filed this personal injury lawsuit against Tyson after an injury she allegedly sustained while working the night shift at the Tyson Foods beef processing plant in Amarillo, Texas.[1] (ECF 1 at 7–14). Yoakum's alleged injuries stem from her lifting a 97-pound box of meat off a conveyor belt to place it onto a pallet. (*Id.* at 8). When Yoakum lifted the box to place it onto the pallet, she alleges that she felt a pop in her back that was accompanied by pain. (*Id.*).

On October 20, 2023, Yoakum served on Tyson the expert reports of her retained experts,

---

[1] Tyson was a non-subscriber to workers' compensation insurance at the time of the occurrence at issue in this case; therefore, Tyson is responsible for work-related injuries to its employees under common-law principles of negligence. *See* Tex. Lab. Code Ann. § 406.033(d) (West 2015); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Southerland v. Kroger Co.*, 961 S.W.2d 471, 472 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

which included Adam W. Pickens, P.h.D—whom she retained to opine on lifting safety and the risks associated with her lifting the 97-pound box. (ECF 30 at 1). Dr. Pickens opines that Yoakum lifting a 97-pound box created a high risk of injury. (*See* ECF 30 at 13–17; *see also* ECF 31-2). His opinion relies on two tools that are not adopted by any industry, including the meatpacking industry: (1) the NIOSH[2] Lifting Equation ("the Lifting Equation") and (2) the Liberty Mutual Psychophysical Tables ("the Liberty Mutual Tables"). (*See* ECF 31-2).

### A. *Tyson*'s *Arguments in Support of its Motion to Exclude*

Tyson argues that "Dr. Pickens's opinions on the applicable standard of care are not relevant or admissible because the weight limits created by the tools and calculations he uses have not been accepted by any industry and they fail to consider any real-world and case-specific factors." (ECF 30 at 2). Tyson makes no argument that Dr. Pickens is not qualified as an ergonomic expert. (*See id.*). Instead, Tyson focuses its argument in support of excluding Dr. Pickens' testimony solely on the relevance of and need for his opinions. (*Id.* at 4). Tyson raises two primary arguments in support of its Motion to Exclude.

First, Tyson asserts that the NIOSH guidelines are not accepted standards in any industry and fail to consider material facts relevant to the case. (*Id.* at 4). In support of its argument, Tyson relies heavily on two cases from outside the Fifth Circuit. (ECF 30 at 4–5); *Taylor v. TECO Barge Line, Inc.*, 642 F.Supp.2d 689 (W.D. Ky. 2009); *Touray v. Glacier Fish Co. Ltd.*, No. C05-1388RSL, 2007 WL 189084 (W.D. Wash. Jan. 22, 2007). Tyson further asserts that Dr. Pickens' opinions should be excluded because he seeks to set the applicable standard of care, even though the Lifting Equation upon which he relies is not accepted by any industry. (ECF 30 at 5) ("Yoakum utilizes Dr. Pickens's testimony to argue that Tyson was negligent for the simple reason that it

---

[2] "NIOSH" is an acronym for the National Institute for Occupational Safety and Health.

allowed any team member to lift more than 51 pounds."). Additionally, Tyson maintains that "the calculations returned by the NIOSH Lifting Equation are not accepted by any industry, so they do not create a duty or set any standard of care." (*Id.* at 6). Tyson also alleges that Dr. Pickens failed to account for Yoakum's "height, weight, age, physical condition, or extensive experience lifting heavy objects" and thus his opinions are "conclusory and unreliable." (*Id.* at 7). Finally, Tyson asserts that Dr. Pickens failed to consider the potential risks associated with a team lift—making his opinions unreliable. (*Id.*).

Second, Tyson contends that the Liberty Mutual Tables are not accepted standards in any industry and fail to consider relevant facts of the case. (*Id.* at 8–10). Tyson further asserts that "Dr. Pickens's testimony regarding [the Liberty Mutual] Psychophysical Tables is not relevant to any issue in this case, as it purports to assign a standard of care to Tyson which simply does not exist." (*Id.* at 8–9) (citing *Taylor*, 642 F.Supp.2d at 691–92). More specifically, Tyson asserts that "Dr. Pickens failed to factor in any real-world, case specific facts in his analysis of the Psychophysical Tables' numerical output." (ECF 30 at 9). Lastly, Tyson argues that "Dr. Pickens failed to analyze the potential effect that a team lift would have on any potential risk to Yoakum." (*Id.*). And therefore, "Dr. Pickens's testimony paints an incomplete picture and would serve only to confuse the jury." (*Id.* at 10).

### B. *Yoakum's Response in Opposition to Tyson's Motion to Exclude*

Yoakum makes three primary arguments in her Response opposing Tyson's Motion to Exclude the testimony of Dr. Pickens. (ECF 31). First, Yoakum argues that Dr. Pickens is qualified to opine on ergonomics, biomechanics, and workplace safety. (*Id.* at 5). Yoakum points out that Tyson does not directly challenge Dr. Pickens' qualifications; instead, Tyson focuses on the relevance of his opinions and the fact he did not apply the facts of this case to the tools he used to

form his opinions. (*Id.*).

Second, Yoakum argues that the Lifting Equation and Liberty Mutual Tables are generally accepted, recognized, and reliable. (*Id.* at 6–10). In support of her argument, Yoakum asserts that the Lifting Equation is a reliable tool among ergonomists. (*Id.* at 7). Yoakum further supports her argument that the Lifting Equation is reliable by citing to two cases from the Eastern District of Louisiana and three cases from outside the Fifth Circuit in which the Lifting Equation was deemed reliable. (*Id.*); *Pape v. Associated Terminals, LLC*, No. 21-674, 2023 WL 6626146 (E.D. La. June 9, 2023); *Stephens v. Florida Marine Transport, Inc.*, No. 12-1873, 2013 WL 11257508 (E.D. La. Sept. 3, 2013); *Hewitt v. Metro-North Commuter R.R.*, 244 F.Supp.3d 379 (S.D.N.Y. 2017); *Marzoll v. Marine Harvest US, Inc.*, No. 08-261-B-S, 2009 WL 4456321 (D. Me. Nov. 29, 2009); *Bennett v. CSX Transp., Inc.*, No. 1:05-CV-839-JEC, 2006 WL 5249702 (N.D. Ga. Sept. 19, 2006).

Yoakum further asserts that she intends to offer Dr. Pickens' testimony to "help the jury understand the *risks* associated with Yoakum's [her] lifting activity—not impose a legal duty." (ECF 31 at 8). Yoakum argues that the two cases Tyson relies on its Motion to Exclude—*Taylor* and *Touray*—are distinguishable from this case. (*Id.* at 9). Yoakum maintains that the Liberty Mutual Tables are reliable and will "help the jury evaluate the risks associated with Yoakum's [Plaintiff] lifting tasks—not define the standard of care." (*Id.* at 10). And she further asserts that the Liberty Mutual Tables are "among **the standards** for evaluating lifting tasks from an ergonomics perspective and that they have been researched, validated, and verified in hundreds of peer-reviewed research articles." (*Id.* at 10) (citing ECF 31-2 at 2) (internal quotation marks omitted).

Third, Yoakum asserts that Tyson's criticisms regarding factors allegedly not considered by Dr. Pickens in forming his opinions are topics for cross-examination, not a basis for exclusion.

4

(ECF 31 at 11–12).

### C. Tyson's Reply Arguments in Support of its Motion to Exclude

In its Reply, Tyson makes three primary arguments. (ECF 32). First, Tyson argues that the manner in which Dr. Pickens used the Lifting Equation has been expressly rejected. (*Id.* at 2). Second, Tyson argues Dr. Pickens' testimony is unnecessary and will not assist the jury in understanding the risks of Yoakum lifting the 97-pound box. (*Id.* at 3). Third, Tyson argues that cross-examination is not the proper remedy for Dr. Pickens' failure to apply the facts of this case to the tools he relied on to form his opinions. (*Id.* at 6).

## II. Legal Standard

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion…" FED. R. EVID. 702. An expert "may testify in the form of an opinion or otherwise ***if the proponent demonstrates to the court that it is more likely than not***[3] that (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. FED. R. EVID. 702(a)–(d) (emphasis added).

It is the district court's role to determine that expert testimony "is not only relevant but reliable," and make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592–93 (1993); *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (making

---

[3] Effective December 1, 2023, to correct widespread misapplication of the Federal Rule of Evidence 702 elements, the language in Federal Rule of Evidence 702 was amended to clarify that district courts must require the proponent of expert testimony to show the court that it is more likely than not that the admissibility requirements in (a)–(d) are met. The amendment was made to increase clarity; it should not impact a court's analysis.

5

*Daubert* applicable to all types of expert testimony). The court's determination must be made "solely on the principles and methodology, not on the conclusions that they generate." *Daubert*, 526 U.S. at 595.

Expert testimony is relevant if it "will help the trier of fact to understand the evidence or determine a fact at issue." FED. R. EVID. 702(a). "Put differently, Rule 702 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (quoting *Daubert*, 509 U.S. at 592). The expert's testimony must also satisfy Federal Rule of Evidence 401. *See Bocanegra*, 320 F.3d at 584; *see also* FED. R. EVID. 401. "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F.App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted).

Although district courts are given broad discretion to determine the admissibility of expert testimony, *Sims v. Kia Motors of Am.*, 839 F.3d 393, 400 (5th Cir. 2016); "the rejection of expert testimony is the exception not the rule." *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, 2016 WL 9560113, at *2–3 (N.D. Tex. Oct. 3, 2016). Simply put, "[t]he *Daubert* inquiry may not replace the adversarial system." *McGowan v. Southern Methodist Univ.*, No. 3:18-CV-141-N, 2024 WL 946954, at *2 (N.D. Tex. Mar. 3, 2024) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002). As the Fifth Circuit put it, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Pipitone*, 288 F.3d at 250

6

(citing *Daubert*, 526 U.S. at 596). "[W]hile exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Pipitone*, 288 F.3d at 250.

### III.     Analysis

Tyson's Motion to Exclude Dr. Pickens is focused on three arguments.[4] First, Tyson argues that Dr. Pickens' use of the Lifting Equation is inadequate and unreliable because he did not input values and "actually run" the Lifting Equation. Second, Tyson argues that neither the Lifting Equation, nor the Liberty Mutual Tables have been accepted in the meatpacking industry—or any industry—as the industry standard. Third, Tyson argues that Dr. Pickens' opinion is unnecessary to assist the jury in understanding the evidence or answering any fact questions in the case because he failed to address key facts and circumstances of the case.

The Court finds that both the Lifting Equation and the Liberty Mutual Tables are reliable, and that Dr. Pickens reliably applied the facts of this case to both tools. Likewise, Dr. Pickens' testimony will help the jury understand the evidence and answer fact questions in this case. Finally, the issues Tyson has with Dr. Pickens' methodology and/or opinions can be addressed via cross-examination and should not be the basis for outright exclusion. *See Pipitone*, 288 F.3d at 250; *see also Daubert*, 526 U.S. at 596.

**A. Dr. Pickens' testimony is based upon sufficient facts and data.**

The first requirement of the reliability inquiry is whether the expert's testimony is grounded upon sufficient facts and data. *See Powers v. Union Pacific R. Co.*, No. 9:07-CV-212-TH, 2009 WL 734707, at *2 (E.D. Tex. Mar. 19, 2009). "This consideration is quantitative rather than qualitative in nature." *Id.* (citing FED. R. EVID. 702 advisory committee's note to 2000 amendment). In other words, the question is whether the expert has relied on a sufficient *quantity*

---

[4] Tyson does not attack Dr. Pickens' qualifications as an expert in biomechanics, ergonomics, or workplace safety.

7

of information.

Here, the Court finds that Dr. Pickens' opinions are based on sufficient facts and data. Notably, Dr. Pickens reviewed relevant filings on the docket, Yoakum's employment files, Tyson's "Safe Lifting Training" and "Lifting Do's and Don'ts", the depositions of Yoakum and her coworkers, and Dr. Pickens was provided with the weight of the box Yoakum was lifting when she allegedly injured her back. (*See* ECF 30 at 16) (listing the materials Dr. Pickens reviewed to form his opinions in this case). He relied on two foundational works/tools: the NIOSH Lifting Equation—which has been accepted as reliable by several federal courts—and the Liberty Mutual Psychophysical Tables. *Bennett*, 2006 WL 5249702 (finding NIOSH Lifting Equation to be reliable); *Hewitt*, 244 F.Supp.3d 379 (same); *Marzoll*, 2009 WL 4456321 (same); *Pape*, 2023 WL 6626146 (same); *Stephens*, 2013 WL 11257508 (same).

Additionally, Dr. Pickens draws on his substantial experience as an expert in workplace ergonomics and his experience as a NIOSH Trainee, for which he has served as a scientific review expert for over 10 years. (ECF 30 at 14). Dr. Pickens also relied upon scientific literature and industry materials to use his expertise to form an opinion on Yoakum's lifting task in this case. (*Id.* at 16). The Court finds the facts and data Dr. Pickens relied upon to be sufficient and of the type reasonably relied upon by experts in the field of biomechanics, ergonomics, and workplace safety.

**B. Dr. Pickens' testimony is the product of reliable principles and methods, and Dr. Pickens applied those principles and methods reliably to the facts of the case.**

Next, the Court must determine whether the principles Dr. Pickens relies on are both reliable in and of themselves and reliably applied to the facts of this case. Courts have considered various non-exclusive factors to aid in making this determination:

> (1) whether the theory or technique underlying the expert's testimony can be or

> has been tested; (2) whether the theory or technique has been subject to peer review and publication; (3) the technique's known or potential rate of error and the existence and maintenance of standards and controls; (4) whether the theory or technique is generally accepted in the relevant field of expertise; (5) whether the theory or technique was developed independent of or expressly for the purpose of litigation; (6) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (7) whether the expert has adequately accounted for obvious alternative explanations; (8) whether the expert has utilized a standard of care comporting with the standard generally required by the field of expertise; and (9) whether the field of expertise is known to reach reliable results.

*See Daubert*, 509 U.S. at 592–94; *see also Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 583 (5th Cir. 2004). As noted, the above list of factors is not exclusive. *See Daubert*, 509 U.S. at 593 ("Many factors will bear on the inquiry and we do not presume to set out a definitive checklist or test."). The test of reliability and relevance is flexible, and courts are given broad discretion to determine which factors apply to different types of expert testimony—no single factor is dispositive. *Id.*; *see also Kumho Tire*, 526 U.S. at 151–52.

1. *NIOSH Lifting Equation*

Dr. Pickens' testimony relies in part on the NIOSH Lifting Equation. The Lifting Equation is a tool used to estimate safe lifting limits for the average adult in the workplace. Specifically, the Lifting Equation was developed by NIOSH to quantify injury risks associated with manual lifting. The Lifting Equation consists of a load constant (51 pounds) that is then multiplied by six variables that only serve to decrease the load constant. In other words, regardless of the values input into the variables, the highest output the Lifting Equation will ever produce is 51 pounds. (*See* ECF 31-4 at 5 – Deposition of Dr. Pickens) ("Every one of those multipliers [in the Lifting Equation] only serves to reduce the load constant of 51 pounds. You can never go above 51 pounds in that, so every one of those [variables] is reducing the load constant.").

The Court finds that the *Daubert* factors suggest that the Lifting Equation is sufficiently

reliable to form the basis of expert testimony. And other courts within the Fifth Circuit have agreed. *Stephens*, 2013 WL 11257508 (E.D. La. Sept. 3, 2013); *Pape*, 2023 WL 6626146 (E.D. La. June 9, 2023). As to the first factor, the NIOSH Lifting Equation can be and has been tested. Likewise, the Lifting Equation has been subjected to peer review and publication; thus, the second factor is met. As to the fourth factor, the NIOSH Lifting Equation appears to be accepted in the field of ergonomics and workplace safety. Dr. Pickens acknowledges that the NIOSH Lifting Equation has not been explicitly adopted by any industries, including the meatpacking industry, but that it is applicable to the work force at large. (*See* ECF 30 at 19–32). The fifth factor is also satisfied as there is no evidence whatsoever that the NIOSH Lifting Equation was developed expressly for litigation. As to the sixth factor, Dr. Pickens did not unjustifiably extrapolate from an accepted premise to an unfounded conclusion. Finally, the field of ergonomics is known to reach reliable results. *See, e.g.*, *Pape*, 2023 WL 6626146, at *8 (finding field of ergonomics to reach reliable results specifically in the context of the Lifting Equation). In sum, the enumerated *Daubert* factors are largely applicable in this situation and weigh in favor of admitting Dr. Pickens' expert testimony.

As noted above, several district courts have admitted opinions like Dr. Pickens' "because the NIOSH standards provide a formulaic, repeatable, and sufficiently reliable method of analyzing the stress placed on the body by a particular lift." *Pape*, 2023 WL 6626146, at *8 (internal quotation marks omitted); *see, e.g.*, *Bennett*, 2006 WL 5249702 (finding NIOSH to be reliable); *Stephens*, 2013 WL 11257508 (same); *Hewitt*, 244 F.Supp.3d 379 (same); *Marzoll*, 2009 WL 4456321 (noting that just because the Lifting Equation is not a perfect tool does not merit its exclusion); *Powers*, 2009 WL 734707, at *2 (finding NIOSH to be reliable). Additionally, the Occupational Safety and Health Review Commission has observed: "While NIOSH recognized

the difficulty quantifying the degree of risk associated with measurements of the lifting index, NIOSH nevertheless found sufficient evidence to indicate that the lifting criteria can reliably predict the risk of LBP [lower back pain]." *Sec'y of Labor v. Beverly Enterprises, Inc.*, 19 BNA OSHC 1161 (Nos. 91-3144, 92-238, 92-819, 92-1257, 93-724, 2000), 2000 WL 34012177, at *18.

Based on the foregoing, the Court concludes that the Lifting Equation is a reliable method for assessing the risk of physical injury faced by Yoakum when she lifted the 97-pound box. Moreover, the Court is confident that any issues Tyson has with Dr. Pickens' methodology and opinions could be addressed on cross-examination. *See Pipitone*, 288 F.3d at 249–50; *see also United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty. State of Mississippi*, 80 F.3d 1074, 1077 (5th Cir. 1996).

  2. *Liberty Mutual Psychophysical Tables*

Not dissimilar from the Lifting Equation, the Liberty Mutual Tables are a tool that Dr. Pickens used that lead him to his conclusion that the box Yoakum lifted in this case exceeds the safe limit under all circumstances. (*See* ECF 30 at 15). According to Dr. Pickens, the Liberty Mutual Tables indicate that no female can safely lift a 97-pound box during a workday without risk of injury. (*Id.*). Like the 51-pound limit in the Lifting Equation, the Liberty Mutual Tables establish that a woman should never, under any circumstances, lift more than 83.6 pounds during a workday without risk of injury. (*Id.* at 15 & 23).

The Liberty Mutual Tables, developed by Liberty Mutual Insurance, cover tasks such as lifting, lowering, pushing, or pulling. (*See id.* at 15). According to Dr. Pickens and his references, the Liberty Mutual Tables are the product of more than 40 years of research on lifting, lowering, pushing, pulling, and carrying and have been subjected to peer review and publication. (*See* ECF 30 at 16). Accordingly, the Court finds that the Liberty Mutual Tables are reliable in and of

themselves.

Likewise, Dr. Pickens reliably applied the facts of this case to the Liberty Mutual Tables to form his opinions. As noted, he reviewed the litigation file, relevant documents, and was provided with the fact that the box Yoakum lifted when she allegedly injured her back was 97 pounds. Dr. Pickens reliably applied the facts of this case to the Liberty Mutual Tables to form his opinion that Yoakum could not have lifted the 97-pound box at issue without facing a risk of injury.

As the Supreme Court stated in *Daubert*, "there are no certainties in science." 509 U.S. at 590. Should Tyson wish to challenge any shortcomings in Dr. Pickens' methodology or his application of the facts to either the Lifting Equation or the Liberty Mutual Tables, it may do so through cross-examination. *See 14.38 Acres of Land, More or Less Situated in Leflore Cnty. State of Mississippi*, 80 F.3d at 1077 ("[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

**C. Dr. Pickens' opinions are relevant.**

The Court next must determine whether Dr. Pickens' opinions are relevant. The relevance inquiry requires the Court to consider whether the opinions of Dr. Pickens will assist the jury in understanding the evidence or answering fact questions. FED. R. EVID. 702(a). Tyson relies on two cases—one from Kentucky and one from Washington—to argue that Dr. Pickens' testimony is not relevant to determining any fact issue(s) in this case. *See Taylor*, 642 F.Supp.2d 689; *Touray*, 2007 WL 189084.

In *Taylor*, the court held that plaintiff "failed to offer sufficient evidence that the Lifting Equation is relevant to determine negligence or unseaworthiness." 642 F.Supp.2d at 692. The court further opined that the "per se lifting limit of 51 pounds is contrary to any standard of reasonable

care the [c]ourt is aware of in the maritime industry, or any other industry." *Id.* Similarly, in *Touray*, the court declined to allow a commercial boat captain to rely on the NIOSH Lifting Equation. 2007 WL 189084, at *4. The court noted that "Plaintiff did not cite any cases, and Captain Greiner [Plaintiff's NIOSH 'expert'] was not aware of any [cases], which used the NIOSH guideline to determine negligence…" *Id.* The *Touray* court also noted that "the [NIOSH] guideline has [not] ever been adopted or applied in these circumstances [aboard a commercial sea vessel]." *Id.*

Nevertheless, the Court is most persuaded by *Stephens* and *Pape* as related to the purpose and relevance of referencing and relying on the Lifting Equation in a negligence case like this one. *See Stephens* 2013 WL 11257508, at *7; *Pape*, 2023 WL 662146, at *8. Addressing *Taylor* specifically, the *Stephens* court wrote: "[a]s this Court understands it, the Lifting Equation does not purport to establish a per se lifting limit of 51 pounds… While the Lifting Equation cannot measure a particular individual's lifting capacity, it does provide a method for calculating the point at which nearly all individuals face a risk of injury." *Id.* The Court is also persuaded by *Pape*. In *Pape*, the court wrote: "Laughery's [the ergonomic expert] opinions do not purport to define a legal duty; rather, Laughery's proffered use of the NIOSH lifting equation will assist the jury in understanding the lifting activities performed by Plaintiff on the date of this alleged injury." 2023 WL 662146, at *8.

Liability in this case is dependent upon a finding of negligence; therefore, the issue before the Court is whether Dr. Pickens' testimony will aid the jury in determining negligence. The Court finds that Dr. Pickens' testimony is sufficiently relevant and will assist the jury in understanding the lifting activities performed by Yoakum on the date of her alleged injury. In sum, Dr. Pickens' testimony may inform the determination of whether Tyson was negligent. *See Bennett*, 2006 WL

5249701, at *7 (finding expert's testimony relying on NIOSH Lifting Equation relevant to determining negligence under *Daubert*); *accord Marzoll*, 2009 WL 4456321 (admitting expert's testimony relying on Lifting Equation to determine negligence and seaworthiness). Dr. Pickens' testimony satisfies the relevance inquiry under *Daubert* and thus should not be excluded on that basis.

### D. Tyson's criticisms of Dr. Pickens' opinions are topics for cross-examination, not a basis for exclusion.

In general, and as stated above, the factual basis of an expert's opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion on cross-examination. *Pipitone*, 288 F.3d at 250. It is well established in the Fifth Circuit that shaky expert testimony that passes muster under *Daubert* should be scrutinized through cross-examination. *Id.*

Tyson takes issue with numerous aspects of Dr. Pickens' testimony. But the aspect that Tyson focuses on most is that Dr. Pickens did not input values into the Lifting Equation to calculate a Lifting Index. First, when asked why he "did not run" the Lifting Equation, Dr. Pickens testified that he did not have the information to input values into the variables and calculate a Lifting Index. (ECF 31-4 at 4). Ultimately, Dr. Pickens concluded it is irrelevant that he did not input values into the equation and calculate a Lifting Index because the maximum weight the Lifting Equation calls for without a risk of injury is 51 pounds. (*See id.* at 5). And in this instance, Yoakum allegedly lifted a 97-pound box, so there was no need for Pickens to run the equation. This is because no matter what values he put into the Lifting Equation, the highest possible output value would be 51 pounds; thus, Dr. Pickens' conclusion would remain the same. (*See id.*).

The Court finds the best mechanism for Tyson to attack Dr. Pickens' testimony is through cross-examination, not exclusion. *See Stephens*, 2013 WL 11257508, at *5 (quoting *Marzoll*, 2009

WL 4456321, at *10) ("[t]he Lifting Equation's limitations and weaknesses… can be adequately addressed during both direct and cross-examination and grasped by a jury.'"). The aspects of Dr. Pickens' testimony that Tyson takes issue with in its briefing are well-suited to be addressed on cross-examination. (*See* ECF 30; ECF 32). In short, the alleged weaknesses with Dr. Pickens' opinions and expert process should go to the weight assigned to his opinion, not its admissibility. *See 14.38 Acres of Land, More or Less Situated in Leflore Cnty. State of Mississippi*, 80 F.3d at 1077.

    **E. The Lifting Equation and the Liberty Mutual Tables cannot establish the standard of care; however, the tools will assist the jury in understanding the lifting activities performed by Yoakum on the date of her alleged injury.**

The Lifting Equation and the Liberty Mutual Tables are not adopted by any industry as industry standards. As such, the Court agrees with Tyson that neither the Lifting Equation nor the Liberty Mutual Tables can take the place of the applicable standard of care.

Because neither the Lifting Equation nor the Liberty Mutual Tables have been accepted by any industry, including the meatpacking industry, Yoakum cannot rely on either tool to establish the standard of care in this case. And the Court will refuse to allow testimony from Dr. Pickens to that effect.[5] However, given his expertise, the tools he used, and his reliable application of the facts of this case, Dr. Pickens is permitted to testify that Yoakum faced a risk of injury when she was asked to manually lift the 97-pound box.

To be sure, Dr. Pickens' testimony may rely on his application of the facts of this case to both tools he chose to utilize, but his testimony cannot establish Tyson breached its standard of care based solely on Yoakum having lifted a 97-pound box.

---

[5] Yoakum appears to agree that neither the Lifting Equation nor the Liberty Mutual Tables impose a legal duty on Tyson. (*See* ECF 31 at 8). Notably, in her Response to Tyson's Motion to Exclude Dr. Pickens she wrote, "Dr. Pickens' testimony on the Lifting Equation will help the jury understand the *risks* associated with Yoakum's lifting activity— not impose a legal duty." (*Id.*) (emphasis in original).

N/A

## IV. Conclusion

Based on the foregoing, the Court finds that Dr. Pickens' testimony should not be excluded under *Daubert*. Accordingly, Tyson's Motion to Exclude Testimony of Adam W. Pickens, Ph.D. is DENIED.

IT IS SO ORDERED.

ENTERED May 21, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE