IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SHELLY YOAKUM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:22-CV-239-BR |
| | § | |
| TYSON FOODS INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Tyson Foods, Inc.'s ("Tyson") Motion for Summary Judgment. (ECF 21). By that Motion, Tyson seeks dismissal of all Plaintiff's claims against it. (*Id.*). After considering the Motion, Response, Reply, and applicable law, Tyson's Motion (ECF 21) is GRANTED in part and DENIED in part.

## I.      Background

Plaintiff ("Yoakum") filed this personal injury lawsuit against Tyson stemming from injuries she allegedly sustained while working at the Tyson plant in Amarillo, Texas. (ECF 1). She initially filed her case in Potter County, Texas—Tyson later removed the case to federal court pursuant to 28 U.S.C. § 1332(a). (*See id.*). Tyson now moves for summary judgment as to each of Yoakum's claims against it. (ECF 21).

At the time of her injury, Yoakum was employed by Tyson at its beef processing plant in Amarillo, Texas as a material handling laborer. (*Id.* at 8). By the time this incident occurred, she had been working in her role at Tyson for about a year. (ECF 22 at 5). On the date of the incident, Yoakum was lifting a 97-pound box from a conveyor belt and attempting to place it on a pallet

when she allegedly felt a pop in her back accompanied by pain. (ECF 1 at 8). Yoakum's job

required her to routinely lift boxes weighing from 15 to 100 pounds. (ECF 26-2 at 12 & 18). It is

undisputed in the record before the Court that Yoakum was doing the same type of work she had

done for a year leading up to this incident—she was not injured doing anything outside the scope

of her ordinary duties.

Yoakum asserts claims against Tyson for negligence and gross negligence.[1] (ECF 1 at 7–

14). More specifically, Yoakum pleads the following acts or omissions in support of her claims:

    a.  Failing to provide proper safety equipment for Plaintiff and/or her co-workers [to] perform their job duties safely;
    b.  Failing to provide proper safety equipment for Plaintiff and/or her co-workers to lift or move boxes safely;
    c.  Failing to provide proper instrumentalities for Plaintiff and/or her co-workers [to] perform their job duties safely;
    d.  Failing to provide proper instrumentalities for Plaintiff and/or her co-workers to lift or move boxes safely;
    e.  Failing to provide necessary assistance to Plaintiff;
    f.  Ignoring its employees' requests for assistance;
    g.  Failing to properly train employees in the techniques of safely lifting or moving heavy boxes without any equipment;
    h.  Failing to properly train in appropriate box-lifting techniques;
    i.  Failing to properly train in appropriate box-moving techniques;
    j.  Failing to develop and implement proper safety protocols for employees engaged in lifting or moving heavy boxes;
    k.  Failing to enforce any existent precautionary measures and safety protocols regarding lifting or moving heavy boxes;
    l.  Disregarding the safety of Plaintiff; and
    m.  Other acts and/or omissions so deemed negligent.

(ECF 1 at 9–10).

Yoakum's pleadings labeled a.–d. will be addressed under her failure to provide necessary

instrumentalities claim. Her pleadings labeled e.–f. will be addressed under her inadequate

---

[1] Tyson was a non-subscriber to workers' compensation insurance at the time of the occurrence at issue in this case; therefore, Tyson is responsible for work-related injuries to its employees under common-law principles of negligence. *See* Tex. Lab. Code Ann. § 406.033(d) (West 2015); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Southerland v. Kroger Co.*, 961 S.W.2d 471, 472 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

assistance claim. And the remaining pleadings will be addressed under her failure to train and/or provide adequate safety instruction claim.

## II.   Legal Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1). A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party must show that the evidence is sufficient to resolve issues of material fact in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Courts in this circuit "hesitate to resolve negligence actions at summary judgment." *Haargaard v. Harris Cnty.*, 35 Fed. App'x 388, at *2 (5th Cir. 2002); *see Zimzores v. Veterans Admin.*, 778 F.2d 264, 267 (5th Cir. 1985) ("It is extremely rare that the issue of negligence can be properly disposed of by summary judgment.").

The moving party initially bears the burden of demonstrating the absence of a genuine issue of material fact. *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Where

a cause of action consists of multiple elements, the movant may show that the non-movant is incapable of establishing one essential element of the offense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party, in response, must then "set forth specific facts showing a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Ultimately, "[w]hen a party bears the burden of proof of an essential element and that party fails to make a showing sufficient to establish the existence of the essential element there is no dispute of material fact regarding the essential element and it is proper to grant summary judgment against the party with the burden of proof." *Fractus, S.A. v. ZTE Corp.*, No. 3:18-CV-2838-K, 2019 WL 5267426, at *4 (N.D. Tex. Oct. 16, 2019).

### III.    Analysis

Tyson seeks summary judgment on all of Yoakum's claims, which include various claims for negligence and gross negligence. (*See* ECF 31).

#### A.  Tyson's Objections to Summary Judgment Evidence

Tyson objects to Exhibits 1, 1-A, 1-B, 3, and 6 attached to Yoakum's Response to Tyson's Motion for Summary Judgment on hearsay grounds. (ECF 29 at 8). At the summary judgment stage, "materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting FED. R. CIV. P. 56(c)(2)). "This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant— without imposing on parties the time and expense it takes to authenticate everything in the record." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017); *see also* FED. R. EVID. 803(4) & (6).

Tyson's objections to Exhibits 1, 1-A, and 1-B (ECF 26-1) are DENIED. The Court has

4

already determined that Dr. Pickens' expert opinions pass muster under *Daubert* (ECF 34), and thus should be considered with the summary judgment motion.

Tyson's objection to Exhibit 3 (ECF 26-3) is DENIED as MOOT, because this evidence was not considered by the Court in ruling on the summary judgment motion.

Lastly, Tyson's objection to Exhibit 6 (ECF 26-6) on hearsay grounds is DENIED. Exhibit 6 includes Yoakum's medical records, which have been authenticated with a Medical Records Affidavit. (ECF 26-6 at 1); *see* FED. R. EVID. 803(4) & (6). Additionally, the Court DENIES Tyson's objection to the medical records based on them being conclusory.

## B.  Tyson's Status as a Nonsubscriber

It is undisputed that Tyson did not have workers' compensation insurance coverage at the time Yoakum was injured (ECF 22 at 6); regardless, a brief note on the role of the Texas Worker's Compensation Act ("TWCA") is helpful.

> [The TWCA] was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment.... The act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on-the-job.... In exchange for this prompt recovery, the act prohibits an employee from seeking common-law remedies from his employer, as well as his employer's agents, servants, and employees, for personal injuries sustained in the course and scope of his employment.

*Odom*, No. 3:13–cv–579, 2014 WL 585329, at *2 (quoting *Austin v. Kroger Tex. L.P.*, 731 F.3d 418, 423 (5th Cir. 2013)). Employers may opt-out of the workers' compensation program. *See* Tex. Lab. Code § 406.002. This Court has previously explained the nature of an employer's options under the TWCA:

> When they opt-out, they are considered a 'non-subscribing employer,' and they forgo certain benefits provided by the TWCA. In particular, the TWCA vests employees of non-subscribing employers with the right to sue their employers for work-related injuries, and the TWCA deprives the non-subscribing

employer of the traditional common law defenses of contributory negligence, assumption of risk, and the fellow-servant rule.

*Odom*, No. 3:13–cv–579, 2014 WL 585329, at *2.

Although "Texas allows employers to opt out of its workers' compensation program," TEX. LAB. CODE § 406.002(a) "the state makes that choice an unattractive one.'" *Austin*, 746 F.3d at 197–98 (quoting *Hook v. Morrison Milling Co.*, 38 F.3d 776, 778 (5th Cir. 1994). "The TWCA vests employees of nonsubscribing employers with the right to bring 'an action against [their] employer' 'to recover damages for personal injuries or death sustained ... in the course and scope of the employment.'" *Austin*, 846 F.3d 326, 331 (5th Cir. 2017); TEX. LAB. CODE § 406.033(a); *see also Austin*, 746 F.3d at 197–98 (noting that the TWC Act "vests employees of non-subscribing employers with the right to sue their employers for work-related injuries or death"). "The Code defines 'course and scope of employment' broadly, so as to include the performance of 'an activity *of any kind or character* that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer.'" *Austin*, 864 F.3d at 331 (citing TEX. LAB. CODE § 401.011(12) (emphasis added)). "This broad definition of 'course and scope of employment' notably does not include any exceptions for routine jobs or tasks performed as part of an employee's 'customary work.'" *Austin*, 864 F.3d at 331–332.

## C. Yoakum's Negligence Claims

To recover for a workplace injury against a nonsubscribing employer like Tyson, Yoakum must establish a negligence claim. Here, that means that at trial, Yoakum must prove that Tyson: (1) owed her a duty; (2) breached that duty; and (3) proximately caused her injury. *See Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995). As a nonsubscriber, Tyson cannot defend this lawsuit by invoking contributory negligence or assumption of the risk. *See* TEX. LAB. CODE ANN. §

406.033(a); *see also Kroger v. Keng*, 23 S.W.3d 347, 350 (Tex. 2000).

There are different "species" of negligence claims that can arise in the employer-employee context. *See Odom v. Kroger Texas, L.P.*, No. 3:13-cv-579-D, 2014 WL 585329, at *3–4 (N.D. Tex. Feb. 14, 2014) (discussing in detail the different "species" of negligence claims); *see also Mejia v. Home Depot U.S.A., Inc.*, No. 3:22-cv-2266-D, 2024 WL 406648 (N.D. Tex. Feb. 2, 2024) (same). The type of negligence claims relevant here are "based on the continuous, non-delegable duties that employers owe their employees" and "is unique to, and specifically derived from, the employment relationship itself." *Id.*; *see also Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996).

"Although an employer is not an insurer of [its] employees' safety at work, an employer does have a duty to use ordinary care in providing a safe work place." *Werner*, 909 S.W.2d at 869 (citing *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993)). Among these duties are the duty to furnish reasonably safe instrumentalities with which to work and the duty to provide necessary equipment or assistance. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam); *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 652 n.10 (Tex. 2007). An employer must also train employees in the safe use and handling of products and equipment used in and around an employer's premises or facilities. *See Kroger Co. v. Milanes*, 474 S.W.3d 321, 335 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (first citing *Austin*, 465 S.W.3d at 215; and then citing *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 311 (Tex. App. 2007, no pet.)).

Tyson argues that it is entitled to summary judgment on Yoakum's negligence claims against it for three reasons. (*See* ECF 22). First, Tyson argues that it did not owe a duty to Yoakum under the circumstances. (*Id.* at 7–11). Second, Tyson argues that there is no evidence it breached any duty it owed to Yoakum. (*Id.*). Third, Tyson argues any breach of its duties was not the proximate cause of Yoakum's injuries. (*Id.* at 11–12).

Whether a legal duty exists is a threshold question of law. *See, e.g.*, *Austin*, 465 S.W.3d at 198. "Under Texas law, the existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 331–32 (5th Cir. 2017). An employer has a non-delegable and continuing duty to provide its employees a safe workplace. *Advance Tire & Wheels*, 527 S.W.3d at 480–81; *see Austin*, 465 S.W.3d at 201 (noting the duty to provide a safe workplace always exists, despite the obviousness of a danger or an employee's awareness of it). This federal district has noted the specific duties born from the broad duty to provide a safe workplace. *See Odom*, No. 3:13–cv–579, 2014 WL 585329, at *4.

Texas courts have stated an employer has the duty to hire competent co-employees, to provide safety regulations, to provide needed safety equipment or assistance, to warn employees of the hazards of their employment, to supervise them, and to furnish reasonably safe instrumentalities with which employees are to work. *See General Electric Co. v. Moritz*, 257 S.W.3d 211, 215 n. 15 (Tex. 2008); *Central Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 652 & n. 10 (Tex. 2007) (duty to provide safe workplace, duty to hire competent co-employees, and duty to provide safety regulations); *Elwood*, 197 S.W.3d at 794 (duty to warn employees of hazards of employment and duty to provide safety equipment or assistance); *Farley v. M. M. Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975) (duty to supervise employees' activities, duty to furnish reasonably safe place in which to labor, and duty to furnish reasonably safe instrumentalities with which employees are to work), *overruled on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 516–17 (Tex. 1978).

In its Motion for Summary Judgment, Tyson makes five separate arguments that it owed no duty to Yoakum. First, Tyson argues that it did not owe a duty to Yoakum to provide any

additional safety equipment or instrumentalities for her to do her job. (ECF 22 at 4–5). Second, Tyson argues that it did not owe a duty to Yoakum because there was assistance available to her— by way of a "team lift." (*Id.* at 5). Third, Tyson argues it did not owe a duty to Yoakum to provide her additional training or to implement additional safety protocols. (*Id.* at 6). Fourth, Tyson argues it did not owe Yoakum a duty because she already knew how to lift safely. (*Id.*). Fifth, Tyson argues it did not owe Yoakum a duty because she was doing the same character of work she and other laborers like her had always done. (*Id.* at 7).

### 1. *Yoakum has offered sufficient evidence to establish her claim that Tyson failed to provide the necessary instrumentalities for her to safely perform her job.[2]*

The Court first turns to Yoakum's claim that Tyson failed to provide her with the necessary instrumentalities for her to safely perform her job.

Yoakum alleges that that Tyson failed to provide the necessary instrumentalities for her to safely perform her job.  (*Id.* at 10). Specifically, Yoakum asserts that a palletizer, or other mechanical means, should have been used to lift the 97-pound box. (*See* ECF 26). Tyson asserts that, although employers have a duty to provide employees with needed safety equipment, there is no duty to provide safety equipment that is unnecessary to the job's safe performance. (ECF 22 at 4) (citing *Austin*, 864 F.3d at 329); *see also Mejia*, 2024 WL 406648, at *4.

"An employer has a continuing, nondelegable duty to use ordinary care in providing a safe workplace, which includes the duty to furnish safe machinery and instrumentalities with which its employees are to work." *Mejia*, 2024 WL 406648, at *6; *see*, *e.g.*, *Fraire v. Budget Rent-A-Car of El Paso, Inc.*, 441 S.W.3d 523, 529 (Tex. App.—El Paso 2014, pet. denied). The Fifth Circuit

---

[2] As stated above, the Court's analysis in this section addresses the following claims Yoakum brings against Tyson: a. Failing to provide proper safety equipment for Plaintiff and/or her co-workers [to] perform their job duties safely; b. Failing to provide proper safety equipment for Plaintiff and/or her co-workers to lift or move boxes safely; c. Failing to provide proper instrumentalities for Plaintiff and/or her co-workers [to] perform their job duties safely; and d. Failing to provide proper instrumentalities for Plaintiff and/or her co-workers to lift or move boxes safely.

applies the six factors laid out in *Allsup's Convenience Stores, Inc. v. Warren*, 934 S.W.2d 433 (Tex. App.—Amarillo 1996, writ denied), to determine whether an instrumentality is necessary for the safe performance of an employee's job. *See Austin*, 864 F.3d at 329–31. To determine whether an instrumentality was not necessary for the safe performance of an employee's job, courts should consider whether:

> (1) the employee had never requested the instrumentality in question; (2) the employee had not complained that the task she was performing was unsafe; (3) the employee had safely performed the task in the past without injury; (4) there was no evidence that the instrumentality "was commonly used in, or had been established by industry standards or customs as a safety measure for" her job; (5) there was no evidence that "a reasonably prudent employer would have provided such instrumentality"; and (6) there was no medical evidence that the instrumentality would have prevented the employee's injury.

*Austin*, 864 F.3d at 329.

Tyson argues it did not have a duty to provide Yoakum with any additional equipment/instrumentalities for her to perform her job safely because "she performed her job of lifting boxes for a year without suffering injury related to that work" and she was "doing the same task, with the same equipment, that she had done safely for the last year" when her injury occurred. (ECF 22 at 7–8). In her Response, Yoakum only claims to satisfy the fourth, fifth, and sixth factors—effectively conceding she cannot satisfy the first, second, and third factors. (ECF 26 at 10–12). The Court finds that concession to be reasonable given the summary judgment record in this case. Regardless, the Court will analyze all six factors to make its determination whether a palletizer was a necessary instrumentality for Yoakum to safely perform her job as a material handling laborer.

As to the first factor, there is no evidence in the summary judgment record that Yoakum ever requested the assistance of a palletizer to perform her job. Likewise, as to the second factor, there is no evidence in the summary judgment record that Yoakum ever complained that her job

was unsafe or that she was concerned with the weight of the boxes, such that she needed additional instrumentalities to safely perform her job. As to the third factor, by the time of this incident, Yoakum had performed the same exact job she was performing on the day of her alleged injury for approximately one year without injury. (ECF 26-2 at 4—Deposition of Shelly Yoakum) (testifying that she had been working at Tyson as a material handling laborer for approximately a year by the time of the incident).

As to the fourth factor, there is evidence that Tyson commonly used a palletizer to reduce the lifting capacity of its material handling laborers. Plaintiff argues that Defendant should have increased the use of its palletizer and put it to better use. (*See* ECF 26). In other words, Plaintiff asserts that boxes as heavy as the one that allegedly caused Plaintiff's injury should never be lifted by humans; instead, the mechanical means available to Tyson should have been used. (*See id.* at 10). Yoakum relies heavily on Dr. Pickens' expert testimony to support her claim that the only way a box weighing 97 pounds should be moved is with mechanical means, like a palletizer. (*Id.*; *see also* ECF 26-1).

Dr. Pickens opines that no individual should ever be required to lift a 97-pound box at work. (ECF 26-1 at 19) ("In my opinion, neither male nor female should be lifting a box weighing 97 pounds."). And he further opines that requiring someone to lift a 97-pound box "dramatically increases the potential risk of injury." (*Id.*). He ultimately wrote in his report that the only way a box of this weight can be safely lifted is with mechanical means, like a palletizer. (*See id.*). Specifically, Pickens wrote: "[I]n my opinion, the only way a box weighing 97 pounds should be moved is with mechanical means. This could include a palletizer, conveyor belt, or some other mechanical means." (*Id.*).

Additionally, there is evidence that at the time of Yoakum's alleged injury Tyson was using

a palletizer to reduce the load of its manual laborers. For example, when asked if a palletizer was used in Yoakum's department at the time of her claimed injury, Nick Hogue—a Tyson employee—answered "[y]es." (ECF 26-5 at 11—Deposition of Nick Hogue). Mr. Hogue further testified that at the time of Yoakum's alleged injury roughly 50% to 60% of boxes were being unloaded with a palletizer. (*Id.*). Additionally, when Mr. Hogue was asked: "Has there been [any] other kind of systems or processes put in place to reduce the capacity for human employees to unload boxes?" he answered "[n]o… [j]ust the palletizer." (*Id.* at 11). Likewise, at the deposition of Roy Shannon—another Tyson employee—he was asked about why one order would go to the palletizer line, and another would go the manual labor line, and he responded: "[m]ost of the time, they would try to get lighter boxes to the stack off [manual labor] line. It's easier on the pickers and it's easier on the box loaders." (ECF 26-4 at 6—Deposition of Roy Shannon). This is additional evidence that Tyson used the palletizer and was using it, at least in part, to reduce the stress it was putting on its material handling laborers by sending lighter boxes to the stack off line and sending heavier boxes to the palletizer line. (*See id.*).

Based on Dr. Pickens' testimony and the apparent availability of the palletizer to reduce the lifting capacity of material handling laborers, there is evidence that a palletizer is used at the Tyson plant and could have been implemented to pick up heavy boxes, including the 97-pound box that allegedly injured Ms. Yoakum. In short, there is evidence that Tyson used a palletizer as a safety measure to reduce the lifting capacity so its employees could safely perform their jobs. Thus, the fourth factor weighs in favor of Yoakum.

As to the fifth factor, Yoakum argues that if Tyson was a reasonably prudent employer, it would have implemented the use of a palletizer to allow Yoakum to safely perform her job. (ECF 26 at 12). In its Reply, Tyson argues that the use of a palletizer was not necessary for Yoakum to

safely perform her job, which is evidenced by the fact that she was able to do her job safely without the palletizer for a year. (ECF 29 at 4). Tyson further agues that it "had no duty to provide equipment that was unnecessary for Yoakum to safely perform her job." (*Id.* at 5). The Court disagrees with Tyson.

Yoakum has presented evidence that no reasonably prudent employer would require its employee to lift a 97-pound box without mechanical means, like a palletizer. Notably, according to Dr. Pickens, no person can lift a 97-pound box without significant risk of injury. (*See* ECF 26-1 at 19). Additionally, as noted above, there is evidence that Tyson took measures to reduce the lifting capacity of its material handling laborers, which tends to show that Tyson knew there was a need to reduce the lifting capacity of its material handling laborers. (*See* ECF 26-5 at 11— Deposition of Nick Hogue; *see also* ECF 26-4 at 6—Deposition of Roy Shannon). And apparently, Tyson has increased the use of its palletizer since the date of Yoakum's alleged injury. (*Id.*) (testifying that the palletizer now does approximately 70% of the unloading at the Tyson plant). Considering Dr. Pickens' expert opinion and the evidence that Tyson was using a palletizer to reduce the lifting capacity of its manual laborers at the time of Yoakum's alleged injury, there is evidence that a reasonably prudent employer would have implemented the use of a palletizer to support its material handling laborers with lifting excessively heavy boxes—like the 97-pound box at issue. Thus, the fifth factor also weighs in favor of Yoakum.

As to the sixth factor, there is little doubt that if Yoakum had not manually lifted the 97-pound box, she would not have injured her back. And Tyson does not contest that fact. Obviously, if a palletizer picked up the 97-pound box for Yoakum and loaded it onto the pallet, she would not have been injured. Thus, the sixth factor weighs in Yoakum's favor as well.

In sum, the first three factors weigh in favor of Tyson, while the second three factors weigh

in favor of Yoakum. Regardless, the Court finds that Yoakum has a raised a fact issue that could allow a reasonable jury to conclude that Tyson breached its duty to provide Yoakum with the necessary instrumentalities to safely perform her job. Namely, a reasonable jury could find that mechanical means were necessary for Yoakum to safely lift a 97-pound box.

Likewise, there is evidence to support that Tyson's alleged breach of its duty to provide Yoakum the necessary instrumentalities to safely perform her job proximately caused Yoakum's back injury. *See Clark v. Waggoner*, 452. S.W.2d 437, 439 (Tex. 1970) ("[T]he two elements of proximate cause are cause in fact and foreseeability."). In other words, there is evidence that Tyson's alleged breach of duty was the cause in fact of Yoakum's claimed lifting injury. (*See* ECF 26-6 at 2 & 4). And a reasonably jury could conclude that it was foreseeable that Yoakum would hurt her back when lifting a 97-pound box without the necessary instrumentalities to do so safely.

Accordingly, the Court finds that summary judgment should be denied as to Yoakum's failure to provide necessary instrumentalities claim because there is a material fact issue on which a reasonable jury could find in Yoakum's favor.

### 2. Tyson owed no duty to provide Yoakum assistance to perform a job she was accustomed to doing; even if it did, assistance was readily available.[3]

The Court next turns to whether Tyson owed Yoakum a duty to provide her assistance to perform her job as a material handling laborer. Yoakum argues that Tyson failed to provide her adequate assistance to safely perform her job. (ECF 1 at 10). Tyson contends that it did not owe Yoakum a duty to provide any additional assistance because assistance was unnecessary, and to the extent it was necessary, assistance was readily available. (ECF 22 at 8).

"Absent evidence that the work is 'unusually precarious' or poses a threat of injury, an

---

[3] As set forth above, the Court's analysis in this section addresses the following claims Yoakum brings against Tyson: e. Failing to provide necessary assistance to Plaintiff; and f. Ignoring its employees' requests for assistance.

employer is not liable for an employee's injuries that 'result from performing the same character of work that employees in that position have always done.'" *Mejia*, 2024 WL 406648, at \*6 (quoting *Elwood*, 197 S.W.3d at 795). Moreover, "[t]he duty to provide adequate help does not include the obligation 'to assign each employee an assistant when the duties or work assignments of such employee may occasionally require assistance and such assistance when needed is available on request or notice.'" *Id.* (citing *Fields v. Burlison Packing Co.*, 405 S.W.2d 105, 108 (Tex. Civ. App.—Fort Worth 1966, writ ref'd n.r.e.).

The Texas Supreme Court has held that an employer is not liable when sufficient help is nearby and available, but the employee does the work alone without asking for assistance. *W. Union Tel. Co. v. Coker*, 204 S.W.2d 977, 979 (Tex. 1947). And even if an employee has asked for assistance in the past—and been rejected—the court may grant summary judgment if the employee did not request help on the occasion of the injury. *See Parker v. Home Depot USA, Inc.*, No. H-19-706, 2020 WL 6728899, at \*1 & \*5 (S.D. Tex. Nov. 16, 2020).

Here, the summary judgment record reveals a few key facts relevant to the Court's determination as to whether Yoakum has brought forward sufficient evidence to support an inadequate assistance claim. First, Yoakum did not ask for assistance on the occasion in question when she allegedly injured her back. Second, assistance was readily available. Notably, there were five other people working with Yoakum on her line at the time of her injury. (*See* ECF 26-2 at 18—Deposition of Shelly Yoakum). The very pallet that Yoakum was loading on the day of the incident had another person doing the same job as her just on the other side of the pallet—she was loading the pallet with a co-worker in close proximity to her. (*Id.* at 12). And there were hundreds of people at the Tyson plant at the time of her injury. (*Id.* at 18). There is no evidence she asked for assistance, despite it being readily available, and there is no evidence she had ever been denied

a request for assistance. At her deposition, when asked if she was alone on the line on the date of her injury, or at any time during her time working for Tyson, Yoakum said "[n]o." (ECF 26-2 at 18—Deposition of Shelly Yoakum); (*see also* 26-5 at 16—Deposition of Nick Hogue) (testifying that when a box is too heavy it is Tyson's policy for the employee to get another team member to help them); (*see also* ECF 26-7 at 8—Deposition of Wesley Brown) ("We've always coached on if—if you can't lift it, call someone to help."). Therefore, the summary judgment evidence indicates assistance was available.

Third, the work Yoakum was doing at the Tyson plant on the occasion in question was of the same character and type that she had been doing for approximately a year without injury. (*See* ECF 26-2 at 4—Deposition of Shelly Yoakum). Importantly, there is no evidence that this work was unusually precarious or that Tyson suddenly demanded Yoakum to lift heavier boxes. In fact, it is well established that Yoakum was able to do the precise work she was doing when she injured her back without assistance for a year. (ECF 26-2 at 4—Deposition of Shelly Yoakum). And she testified at her deposition that she knew the boxes varied in weight from 25 to 100 pounds. (ECF 26-2 at 12 & 18—Deposition of Shelly Yoakum). The 97-pound box—while at the upper end— was not uncharacteristically heavy, i.e., it was less than 100 pounds. (*See id.*). Yoakum also testified at her deposition that she was aware of the potential weight of the boxes before she picked up the 97-pound box—which said how much it weighed on it. (ECF 26-2 at 12 & 18—Deposition of Shelly Yoakum) ("[A]ll the boxes have a tag on them [that says the weight]."). In fact, when asked if she knew before picking up the 97-pound box that the boxes varied in weight from 25-100 pounds, Yoakum said, "[y]es." (*Id.* at 18).

Moreover, the facts of the cases in which courts have allowed an employee's claim to proceed past summary judgment for his/her employer failing to provide adequate assistance differ

substantially from this case. *Compare Mejia*, 2024 WL 406648, at *7 (finding employer owed employee a duty when she asked for assistance and was doing different work than was customary for her role due to staffing shortages during Winter Storm Uri in February 2021), *and Brookshire Brothers, Inc. v. Lewis*, 997 S.W.2d 908, 914 (Tex. App.—Beaumont 1999, pet. denied) (finding employer owed its employee a duty because his injury did not occur on a "typical, normal day") *with Molina v. Home Depot U.S.A., Inc.*, 20 F.4th 166, 169 (5th Cir. 2021) (affirming summary judgment on inadequate assistance claim when the employee admitted that he performed the task that injured him nearly every day for a year and had never asked for help), *Fields*, 405 S.W.2d at 107 (finding employer owed no duty to employee to provide help when the employee had performed the task at issue many times over a three-year period and never once asked for assistance, despite knowing the item she was lifting was heavy). Yoakum's inadequate assistance claim is most akin to the plaintiffs' claims in *Fields* and *Molina*—two cases where there was insufficient evidence to support an inadequate assistance claim because the employees were doing the same type of work they had done for a long period of time, they had done so without help, and without asking for help on the occasion in question. *See Molina*, 20 F.4th at 169; *Fields*, 405 S.W.2d at 107.

Accordingly, the Court finds that Yoakum has failed to bring forth sufficient evidence that would allow for a reasonable jury to conclude she was not provided adequate assistance by Tyson. Thus, the Court grants summary judgment on Yoakum's inadequate assistance claim.

### 3. *Tyson owed no duty to Yoakum to provide additional training or safety instruction, and even if it did, there is no evidence Tyson breached its duty.*[4]

The Court now turns to Tyson's contention that it did not owe Yoakum a duty to provide additional training or safety instruction on how to lift a 97-pound box from a conveyor belt onto a pallet. Yoakum argues that Tyson failed to provide her adequate training or adequate safety instruction for her to safely perform her job as a material handling laborer. (ECF 1 at 10). Tyson asserts that Yoakum was given adequate training and that no additional training could have prevented this injury. (*See* ECF 22; *see also* ECF 29).

"Employers have a continuous, nondelegable duty to train their employees properly, which includes the duty to instruct employees on how to use equipment safely on and around the employer's premises or facilities." *Mejia*, 2024 WL 406648, at *3; *see Elwood*, 197 S.W.3d at 794–95; *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex. App.—Dallas 2005, pet. denied); *Allen v. A & T Transp. Co.*, 79 S.W.3d 65, 70 (Tex. App.—Texarkana 2002, pet. denied). Nevertheless, "Texas courts have held that 'an employer has no duty to adopt safety rules where its business is neither complex nor hazardous or where the dangers incident to the work are obvious or are of common knowledge and fully understood by the employee." *Ovalle*, 2022 WL 4009181, at *5 (quoting *Nat'l Convenience Stores Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.)); *see also Austin*, 465 S.W.3d at 210 ("[T]he employer owes no duty to warn or train employees with respect to dangers that are commonly known or already appreciated by the employee."); *W.E. Grace Mfg. Co. v. Arp*, 311 S.W.2d 278, 281 (Tex. App.—

---

[4] As detailed above, the Court's analysis in this section addresses the following claims Yoakum brings against Tyson: g. Failing to properly train employees in the techniques of safely lifting or moving heavy boxes without any equipment; h. Failing to properly train in appropriate box-lifting techniques; i. Failing to properly train in appropriate box-moving techniques; j. Failing to develop and implement proper safety protocols for employees engaged in lifting or moving heavy boxes; k. Failing to enforce any existent precautionary measures and safety protocols regarding lifting or moving heavy boxes; and l. Disregarding the safety of Plaintiff.

Dallas 1958, writ ref'd n.r.e.) ("[T]here is no duty on the part of an employer to instruct an employee who is experienced in the line of work to which he is assigned…").

"To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Ovalle v. United Rentals N. Am., Inc.*, No. 2:18-cv-211-Z, 2021 WL 3022905, at *8 (N.D. Tex. July 16, 2021); *Parker*, 2020 WL 6728899, at *5). "[A]n employer's duty to instruct applies to an inexperienced employee, but not to one who is experienced in the work he is assigned." *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 661 (Tex. App.—Dallas 2005, pet denied.). Moreover, "[t]he age and experience of the employee should be considered in measuring the duty of the employer." *Id.* at 660.

Here, by Yoakum's own admissions, she was keenly aware of the dangers involved with her manual labor job and those risks were fully understood by her, which is evidenced by her consistent deposition testimony stating that she knew of the risks involved with her lifting job and had received extensive training on lifting from her time with Tyson and her prior employers. (ECF 26-2 at 5—Deposition of Shelly Yoakum) (explaining how to lift safely and agreeing that proper lifting technique is "common sense" and something she has known "for years and years"); (ECF 26-2 at 6—Deposition of Shelly Yoakum) (testifying that she received lifting training during her time working at Walmart, Sonic, and KBR); (ECF 26-2 at 7—Deposition of Shelly Yoakum) ([Yoakum] continuing to agree that proper lifting technique is "common knowledge" and discussing the significant lifting training she has received over the years). At Yoakum's deposition, counsel for Tyson asked, "[L]et's assume that you got no training and [were] thrown out on the floor [at Tyson]. What you've already told us is, you knew from long life experience the proper way to lift a box, right?" (ECF 26-2 at 29—Deposition of Shelly Yoakum). Yoakum candidly

responded, "[y]es." (*Id.*).

Based on the foregoing, Tyson owed not duty to provide Yoakum additional training or safety instruction on how to lift a 97-pound box. The dangers of her job at Tyson were well known to her and she appreciated the risks involved—she admits that herself. (*See* ECF 26-2 at 5, 6, 7, 18, & 29—Deposition of Shelly Yoakum). Accordingly, because Tyson did not owe a duty to provide training to Yoakum, summary judgment is proper as to Yoakum's failure to train and failure to provide safety instruction claim.

Even assuming for argument's sake that Tyson did have a duty to provide additional training or additional safety instruction to Yoakum, a reasonable jury could only find from the summary judgment record that Tyson provided her adequate training and safety instruction. In other words, Tyson did not breach its duty, even if it were found to have a duty. There is significant evidence in the record of Yoakum receiving extensive training during her time at Tyson. (*See* ECF 26-5 at 14 & 19—Deposition of Nick Hogue; *see also* ECF 26-7 at 7 & 8—Deposition of Wesley Brown). In fact, Yoakum said herself at her deposition that she knew how to lift safely and had received extensive training on how to lift safely from Tyson, as well as from her prior employers. (*See* ECF 26-2 at 5, 6, 7, 18, & 29—Deposition of Shelly Yoakum).

The depositions of other Tyson employees demonstrate that training and workplace safety were emphasized at the Tyson plant, with a particular focus on safe lifting techniques. For example, Nick Hogue—a Tyson employee—testified at his deposition that "[w]e [Tyson] do a group [safety] meeting every day at start of shift." (ECF 26-5 at 14—Deposition of Nick Hogue). And when asked what is discussed at the daily safety meetings, Nick Hogue testified that "[w]e talk about proper lifting, if you need help, get help, don't do anything you're not supposed to, and the last thing we say is [to] be safe before we send anybody to work." (*Id.* at 19—Deposition of Nick

Hogue). Mr. Hogue then testified that "[l]ifting is covered every day [at the start-of-shift safety meeting] because it's the biggest part of our job." (*Id.*).

The Court concludes that there are no genuine issues of material fact regarding whether Tyson breached its duty to train and provide safety instruction to Yoakum. Tyson has conclusively established that it did not breach its duty to train and provide safety instruction to Yoakum. And Yoakum has failed to bring forth facts to support a finding that Tyson breached its duty. The Court, therefore, grants summary judgment as to Yoakum's failure to train and/or provide adequate safety instruction claim.

### D.  Yoakum's Gross Negligence Claim

Tyson also moves for summary judgment on Yoakum's gross negligence claim, contending that there is no clear and convincing evidence of a serious likelihood of harm, that Tyson was aware of such a risk, or that Tyson disregarded such a risk with conscious indifference to Yoakum's welfare. (ECF 22 at 12). Yoakum argues that Dr. Pickens' opinion establishes that her having to lift a 97-pound box involved an extreme degree of risk. (ECF 26 at 18). Yoakum further asserts that Tyson knew of the risks involved with making its employees lift such heavy boxes but required them to do so anyway, thus satisfying the subjective prong to establish gross negligence. (*Id.*). In support of her argument, Yoakum points to the deposition testimony of Roy Shannon, who testified he has injured his back at the Tyson plant while lifting on numerous occasions. (ECF 26-4 at 6–7 & 13—Deposition of Roy Shannon) (testifying that he has hurt his back while lifting at the Tyson plant three times over the past five years). Yoakum also points to the deposition of Nick Hogue to show that he had to fill out investigation reports for other Tyson employees who were hurt from lifting boxes at the plant. (*See* ECF 26 at 18; *see also* ECF 26-5 at 8—Deposition of Nick Hogue).

To recover for a gross negligence claim in Texas, Yoakum must satisfy the elements of her negligence claim(s) and demonstrate clear and convincing evidence of "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *Austin*, 746 F.3d at 196 n.2 (quoting *State v. Shumake*, 199 S.W.3d 279, 286 (Tex. 2006). Yoakum must establish that (1) "viewed objectively from the actor's [Tyson] standpoint, the act or omission ... involve[d] an extreme degree of risk, considering the probability and magnitude of the potential harm to others," and (2) "the actor [Tyson]… [had] actual, subjective awareness of the risk involved, but nevertheless proceed[ed] in conscious indifference to the rights, safety, or welfare of others." *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex. 1998).

Here, Yoakum has established that there is a genuine issue of material fact on which a reasonably jury could find Tyson was grossly negligent. Yoakum has established sufficient evidence to support her failure to provide necessary instrumentalities claim, and the Court finds there is a genuine issue of material fact as to whether Tyson was grossly negligent for having Yoakum manually lift a 97-pound box when it could have instead used a palletizer to lift such a heavy box. This is true given the extreme degree of risk involved with lifting a 97-pound item and the fact that Tyson knew its employees were commonly injured while lifting at the plant, as evidenced by Dr. Pickens' expert opinion and the deposition testimony of Roy Shannon and Nick Hogue. Dr. Pickens' expert opinion that no person should ever manually lift a 97-pound box is evidence of the extreme degree of risk associated with Yoakum lifting a 97-pound box. (*See generally* ECF 26-1). And the deposition testimony of Mr. Hogue and Mr. Shannon tends to show that Tyson knew that its employees injured their backs on a regular basis while lifting at its plant. (ECF 26-4 at 6—Deposition of Roy Shannon; ECF 26-5 at 8—Deposition of Nick Hogue).

Moreover, as noted previously, there is evidence that Tyson uses a palletizer to reduce the lifting capacity for its employees, like Yoakum, which tends to establish Tyson's subjective knowledge of the risks involved with its employees manually lifting excessively heavy boxes, like the 97-pounud box at issue in this case. Further, there is evidence that Tyson generally tries to send heavier orders/boxes down the palletizer line and lighter orders/boxes down the stack off line to reduce potential injuries to its material handling laborers on the stack off line. This provides additional evidence of Tyson's subjective awareness of the risk involved with its employees lifting excessively heavy boxes. (*See* ECF 26-4 at 6—Deposition of Roy Shannon).

In sum, when viewing the evidence before the Court in the light most favorable to Yoakum, the Court finds that a reasonable jury could conclude Tyson was grossly negligent for having its employees manually lift boxes weighing as much as 97 pounds, when a palletizer could have been implemented instead. Accordingly, the Court denies summary judgment as to Yoakum's gross negligence claim.

## I.      Conclusion

Based on the foregoing, after having considered Tyson's Motion for Summary Judgment (ECF 21), the Court finds the following:

- Tyson's Motion for Summary Judgment on Yoakum's failure to provide necessary instrumentalities claim is DENIED;
- Tyson's Motion for Summary Judgment on Yoakum's inadequate assistance claim is GRANTED;
- Tyson's Motion for Summary Judgment on Yoakum's failure to train and/or provide adequate safety instruction claim is GRANTED; and
- Tyson's Motion for Summary Judgment on Yoakum's gross negligence claim is DENIED.

IT IS SO ORDERED.

ENTERED May 21, 2024.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE